**James D. SUMMERS, Plaintiff,**

v.

**COMMUNICATION CHANNELS, INC., Defendant.**

**No. 88 C 4260.**

United States District Court, N.D. Illinois, E.D.

Feb. 7, 1990.

---

James W. Malloy, Chicago, Ill., for plaintiff.

Timothy J. Rivelli, Peter C. McCabe III, Winston & Strawn, Chicago, Ill., William A. Clineburg, Jr., Michael S. Thwaites, David C. Nutter, King & Spaulding, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

In this action, brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, plaintiff claims that defendant forced him into early retirement because of his advanced age. Before the court is defendant's motion for summary judgment. For the following reasons, defendant's motion is granted.

## I. BACKGROUND

The following are the facts relevant to defendant's motion for summary judgment. Defendant is a national publisher of trade magazines and directories for various industries. The profitability of the magazines and directories depends largely on the

number of pages of advertising sold in the publications. Defendant employs both sales representatives and "publishers." The sales representatives sell advertising space in the publications, and are paid by commission. The "publishers" of the various magazines and directories supervise the sales representatives and are ultimately responsible for the number of pages of advertising sold. Publishers are paid a salary plus a commission which is based on the total sales of their staff.

Plaintiff, who had previously worked as an independent sales representative in this industry, joined defendant as a sales representative in 1973. Deposition of James D. Summers ("Summers Dep.") at 269–70. At the same time, plaintiff's long-time friend Benjamin Kotsher became a vice-president of defendant. Kotsher became president of defendant in 1981. Plaintiff worked as a commissioned sales representative until 1983. In June of 1983, he was promoted to the position of publisher of Swimming Pool Age, a magazine which had recently been acquired by defendant. Six months later, however, he was removed from this position. Summers Dep. at 332.

After being removed as publisher of Swimming Pool Age, plaintiff was given the position of "Publisher of Industrial Group Directories." Exhibit 18 to Defendant's Motion for Summary Judgment. While the parties debate the adequacy of plaintiff's performance in this position, it is undisputed that Kotsher was dissatisfied with plaintiff's performance. In a memo dated October 1, 1984, Kotsher criticized the failure of plaintiff's sales representatives to sell directories along with magazines. Defendant's Exhibit 32. Plaintiff admits that Kotsher blamed him for this failure. Summers Dep. at 374. On November 8, 1984, Kotsher sent plaintiff another memo in which he criticized the performance of the directories and suggested that they should contain at least 200 pages of advertising. Defendant's Exhibit 35. Plaintiff contends that this 200 page quota was unrealistic. Summers Dep. at 378.

After this November 8th memo, advertising sales increased sharply. In a memo dated December 6, 1984, Kotsher, noting the increase, expressed his displeasure at the fact that such selling activity did not appear to occur year-round. Defendant's Exhibit 38. Plaintiff admits that, from November of 1984 until plaintiff's retirement in August of 1986, Kotsher continually expressed his disappointment with plaintiff's performance. Summers Dep. at 385.

In 1986 defendant came under pressure from its owners because of declining advertising sales and increased publication costs. Affidavit of Jerrold France at ¶ 11. Consequently, Kotsher became more concerned about plaintiff's performance as a directory publisher. On February 13, 1986, Kotsher sent plaintiff a memo expressing his disappointment at the poor advertising sales in the directories which were under plaintiff's supervision. Defendant's Exhibit 3. In May of 1986, Kotsher called plaintiff and asked him whether he would consider returning to the position of commissioned sales representative. Summers Dep. at 162. At this time, plaintiff understood that Kotsher was concerned about the poor performance of the directories under plaintiff's control. Summers Dep. at 407. Plaintiff declined the offer, explaining in a May 16, 1986 memo that he could not handle the demands of a sales position because his wife was very ill and because he had some health problems of his own. Defendant's Exhibit 4.

Plaintiff concedes that, when Kotsher offered him the sales representative position, Kotsher never told plaintiff that he might be fired. Summers Dep. at 172. Plaintiff nonetheless inquired about defendant's severance pay policy in his memo of May 16th. Defendant's Exhibit 4. Kotsher responded to this memo on May 21, 1986, and emphasized that, in making the sales representative offer to plaintiff, he had not mentioned or even implied that plaintiff might be terminated. Defendant's Exhibit 5. Kotsher also noted that he wanted to find a suitable position for plaintiff within the company. *Id.* Plaintiff understood that Kotsher wanted him to remain with the company. Summers Dep. at 174–75.

In the summer of 1986, defendant's advertising sales continued to decline. On July 28, 1986, Kotsher sent a memo on this subject to all the publishers, including Summers, in which he emphasized the company's desperate need for increased sales activity. Defendant's exhibit 6. Plaintiff admits that he did not meet his sales quota during this period, but contends that the quota was unrealistic. Summers Dep. at 185. Finally, in a letter dated August 8, 1986, Kotsher offered plaintiff the opportunity to select early retirement, under which he would be entitled to $472.50 per month in pension payments. Defendant's Exhibit 7. Also in the letter, Kotsher said that he found it "exceedingly difficult" to justify plaintiff's salary, and while emphasizing the urgency of the matter, urged plaintiff to "[m]ull things over." *Id.* On August 13, 1986, plaintiff responded to Kotsher's letter and elected early retirement. Defendant's Exhibit 8. Kotsher died in July of 1987.

On May 16, 1988, plaintiff filed this lawsuit under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34. In it he claims that defendant forced him into early retirement because of his age, in violation of the ADEA. Defendant has put forth several arguments in support of its motion for summary judgment. First, defendant contends that plaintiff has produced no evidence from which a jury could reasonably conclude that defendant intended to discriminate on the basis of age. Secondly, defendant argues that, by offering plaintiff's declining sales as a legitimate reason for its actions, it shifted the burden of proof to plaintiff to demonstrate that the articulated reason was a mere pretext for discrimination. Defendant asserts that plaintiff has failed to meet this burden. Finally, defendant contends that plaintiff has no cause of action under the ADEA because he was not actually discharged. Plaintiff does not respond directly to any of these arguments, but contends, generally, that summary judgment is inappropriate because he has made out a prima facie case of age discrimination, and because material issues of fact remain as to whether he was performing

his job adequately. Both sides have submitted briefs on the issue of what effect the recent Supreme Court decision in *Price Waterhouse v. Hopkins*, — U.S. —, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), has on this case. We have considered all the materials filed by the parties, and we find that defendant's motion for summary judgment should be granted.

## II. ANALYSIS

### A. Effect of *Price Waterhouse v. Hopkins*

After the motion for summary judgment in this case was fully briefed, the Supreme Court decided *Price Waterhouse v. Hopkins*, — U.S. —, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). While we find the *Price Waterhouse* decision relevant, we also find that it does not change the result in this case. A plaintiff in an age discrimination suit may elect to prove discrimination with either direct or indirect evidence. One method of proving discrimination is to produce direct evidence that the employer's employment decision was based, at least in part, on the employee's age. In such cases, the employer will normally seek to prove that some other factor also influenced the decision; these cases are thus referred to as "mixed motive" cases. *See Adams v. Frank*, 712 F.Supp. 74, 76 (E.D. Va.1989).

It is often difficult for a plaintiff in any type of discrimination case to produce direct evidence of discriminatory intent. Recognizing this difficulty, courts have allowed plaintiffs in many types of discrimination suits, including age discrimination suits, to attempt to prove their case with indirect evidence. In such cases, the plaintiff uses indirect evidence to raise a presumption that the employer has engaged in discrimination. *Price Waterhouse*, 109 S.Ct. at 1801 (O'Connor, J., concurring); *Henn v. National Geographic Society*, 819 F.2d 824, 828 (7th Cir.1987). This is known as making out a prima facie case. *Henn*, 819 F.2d at 828; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Once a

plaintiff makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. *McDonnell–Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If the employer offers such a legitimate reason, the burden then shifts back to the employee to prove that the reason offered by the employer was a mere pretext for discrimination. *Dorsch v. L.B. Foster Co.*, 782 F.2d 1421, 1424 (7th Cir.1986). This analysis is commonly called the *McDonnell–Douglas* analysis.

In *Price Waterhouse v. Hopkins*, —— U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the plaintiff was a senior manager in the defendant accounting firm. Her application for partnership was initially put on hold, and later rejected altogether. The plaintiff then brought suit under Title VII, claiming that defendant discriminated on the basis of sex in making its partnership decisions. *Id.*, 109 S.Ct. at 1781. At trial, the plaintiff introduced evidence demonstrating that the defendant's partners relied on sex-based stereotypes in making decisions on admission to the partnership, and that some partners reacted negatively to her because she was a woman. *Id.* at 1781–83. The District Court held that because plaintiff had affirmatively proven that defendant had improperly considered sex in making its partnership decisions, the defendant could avoid equitable relief only by proving by clear and convincing evidence that it would have rejected plaintiff's partnership bid even in the absence of sex discrimination. *Id.* at 1783. The judge found that the defendant could not avoid equitable relief because it could not meet this heavy burden. *Id.* The Court of Appeals for the District of Columbia Circuit, affirmed the conclusion of the District Court, though it found that, where an employer can prove with clear and convincing evidence that it would have made the same employment decision in the absence of discrimination, it avoids liability altogether, as opposed to merely avoiding equitable relief. *Id.*

In a plurality opinion, the Supreme Court reversed and remanded the case. The Court agreed with the analysis of the D.C.

Circuit, except for its requirement that the employer prove that its decision was justified by clear and convincing evidence. The four-justice plurality and Justices O'Connor and White, in concurring opinions, all agreed that the employer's proof need only be subject to the preponderance of the evidence standard. *Id.* at 1783–84, 1796. In addition, while Justice White disagreed with the plurality on whether an employer must offer objective evidence, and Justice O'Connor disagreed with the stringency of the plaintiff's burden of proof, all six justices agreed on the basic framework to be used in Title VII cases where the employee has demonstrated that the employer's decision was improperly motivated. This framework is as follows: where a plaintiff proves that the employer improperly considered a discriminatory factor in making its employment decision, the defendant may avoid a finding of liability by proving by a preponderance of the evidence that it would have made the same decision even if it had not considered the improper factor. *Id.* at 1795, 1796.

■■■■ Plaintiff argues, and defendant does not dispute, that the *Price Waterhouse* decision should apply to age discrimination cases. We agree that *Price Waterhouse* should apply to such cases, given the similarity of the statutory language in Title VII and the ADEA. *See* 29 U.S.C. § 623; 42 U.S.C. § 2000e–2. We also find, however, that the *Price Waterhouse* decision only applies in "mixed-motive" cases, i.e., cases where the plaintiff has produced some direct evidence that the employer considered improper factors in making its decision. It does not apply to cases analyzed under the *McDonnell–Douglas* standard, i.e., cases where the plaintiff relies upon indirect evidence to shift the burden of persuasion to the employer. This is evident because the plaintiff in *Price Waterhouse* produced direct evidence of sexual discrimination, rather than relying on the *McDonnell–Douglas* approach. 109 S.Ct. at 1781–83. In addition, the plurality clearly analyzed the case as a mixed-motive case and distinguished it from *Texas Dept. of Community Affairs v. Burdine*, 450 U.S.

248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), which was analyzed under the *McDonnell–Douglas* indirect evidence framework. *Id.* 109 S.Ct. at 1788; *see also id.* at 1789, n. 12, 1791. Finally, both concurring opinions explicitly stated that "mixed-motive" cases such as *Price Waterhouse* are to be analyzed differently than "pretext" cases such as *McDonnell–Douglas* and *Burdine*. *Id.* 109 S.Ct. at 1796, 1805. The United States District Court for the Eastern District of Virginia has also found, as we do, that *Price Waterhouse* only applies to "mixed motive" cases. *Adams v. Frank*, 712 F.Supp. 74, 76–77 (E.D.Va.1989).

As Justice O'Connor suggests in her plurality, *id.* 109 S.Ct. at 1805, in analyzing this case we first determine whether the *McDonnell–Douglas* or *Price Waterhouse* analysis applies. We find that plaintiff has failed to put forth any evidence that defendant considered his age in making the decision to offer him early retirement, so plaintiff has not satisfied the *Price Waterhouse* threshold. We thus analyze the case under the *McDonnell–Douglas* framework. *Id.* Under this framework, once plaintiff has made out a prima facie case of discrimination and the employer has countered by articulating a legitimate reason for its employment decision, the burden is on the plaintiff to demonstrate that the employer's asserted reason is a mere pretext for discrimination. We find that plaintiff has not made out a prima facie case and that, in any event, he has not produced any evidence demonstrating that defendant's stated reason was a "pretext" for discrimination. Summary judgment in favor of defendant is thus appropriate.

### B. *Plaintiff's Case Under Price Waterhouse*

As noted above, to have his case analyzed under the *Price Waterhouse* framework so that defendant bears the burden of demonstrating that it would have made the same decision in the absence of discrimination, plaintiff must at least prove that age played a motivating part in the employment decision. *Price Waterhouse*, 109 S.Ct. at 1795. At the summary judgment stage, plaintiff has the burden of

demonstrating that material issues of fact exist as to whether the decision to offer him early retirement was motivated by age considerations. *See Beard v. Whitley County REMC*, 840 F.2d 405, 409–10 (7th Cir.1988). All reasonable inferences to be drawn from the evidence must be drawn in favor of plaintiff. *Id.* We find that plaintiff has produced no credible direct evidence that defendant's decision was motivated by considerations of age, and that plaintiff is thus not entitled to have his case analyzed under *Price Waterhouse*.

Most of the evidence produced by plaintiff in this case relates to his claims that he was qualified for the publisher position and that Jerrold France, defendant's executive vice-president, had a personal vendetta against him. Only two pieces of evidence even arguably suggest that age had anything to do with defendant's treatment of plaintiff. One is a statement allegedly made by Benjamin Kotsher in 1982 that the company could not fire plaintiff because of his age. Affidavit of Robert Bayless, ¶¶ 8–9. Not only was this alleged statement made four years before the offer of early retirement, it suggests no animus toward plaintiff on account of his age. Rather it suggests that Kotsher tried to accommodate plaintiff because of his age and length of service. *Id.* The other evidence consists of plaintiff's own assertions, in his affidavit and depositions, that France had a "history of derisive comments about older employees." Plaintiffs Memorandum on Impact of *Price Waterhouse* Decision at 4. These assertions are unsupported by the testimony of anyone else, and in any event neither one of France's two alleged comments was made in relation to an employment decision. Affidavit of James D. Summers, ¶¶ 29–30. Plaintiff has not made enough of a showing of age discrimination to satisfy the *Price Waterhouse* threshold.

### C. Plaintiff's Case Under *McDonnell–Douglas*

As plaintiff has failed to produce direct evidence of age discrimination, as he must to make this a *Price Waterhouse* case, his case must be analyzed under the *McDon-*

nell–Douglas framework. Under McDonnell–Douglas, the plaintiff may make out a prima facie case with circumstantial evidence sufficient to raise a presumption that the employer has engaged in discrimination in making its employment decision. McDonnell–Douglass Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); La Montagne v. American Convenience Products, Inc., 750 F.2d 1405, 1409 (7th Cir.1984); Dorsch v. L.B. Foster Co., 782 F.2d 1421, 1424 (7th Cir. 1986). Once a plaintiff makes out a prima facie case, the employer has the opportunity to articulate a legitimate, non-discriminatory reason for its employment decision. Dorsch, 782 F.2d at 1424. Once the employer does so, the burden shifts back to the employee to prove that the employer's asserted reason is a mere pretext for discrimination. Id.

■ We find that plaintiff has not made out enough of a prima facie case of discrimination to withstand a motion for summary judgment. In age discrimination cases, a plaintiff can make out a prima facie case with a four-part showing: 1) that he was within the protected age group 2) that he was doing his job well enough to meet his employer's legitimate expectations 3) that in spite of his performance he was discharged and 4) that his employer sought a replacement for him. La Montagne, 750 F.2d at 1409.

The parties do not dispute plaintiff's proof with respect to steps one and four of his prima facie case. Plaintiff, who was 63 at the time he was offered early retirement, was within the projected age group at the time of the employment decision. See 29 U.S.C. § 631. It is similarly undisputed that defendant sought a replacement for him. Defendant contends that plaintiff cannot make a showing on step three because he chose voluntary retirement rather than being discharged. For purposes of plaintiff's prima facie case, however, we will assume that he was discharged. The biggest source of disagreement between the parties arises at step two of the analysis. The parties debate whether plaintiff was doing his job well enough to meet

defendant's legitimate expectations. We find that plaintiff has failed to produce enough evidence on the issue of his job performance to withstand a motion for summary judgment. Plaintiff thus cannot make out a prima facie case of age discrimination.

At step two of his prima facie case, a plaintiff must demonstrate that he was "doing his job well enough to meet his employer's legitimate expectations." La Montagne, 750 F.2d at 1409. The employer's "legitimate expectations" depend on the nature of the employer's business at the time the employment decision is made. See Dorsch, 782 F.2d at 1425. In this case, defendant has produced evidence demonstrating that it needed its publishers to increase the number of advertising pages in its directories, as opposed to merely maintaining the number of pages at past levels. Summers Dep. at 343; France Affidavit, ¶ 9. Defendant also introduced evidence that Kotsher set a specific performance quota for plaintiff. Defendant's Exhibit 35. Plaintiff does not dispute defendant's contention that he did not increase advertising sales, and he admits that he did not meet the quota set by Kotsher. Summers Dep. at 185. Further evidence of plaintiff's poor performance comes from the series of memos from Kotsher criticizing plaintiff's performance as Publisher of Industrial Directories. Defendant's Exhibits 32, 35, 38. In addition, plaintiff admits that Kotsher continually expressed displeasure with plaintiff's performance, beginning in November of 1984. Summers Dep. at 385. This criticism began long before the decision was made to offer plaintiff early retirement.

Plaintiff seeks to establish step two of his prima facie case with sales and income records from the time he was the Publisher of Industrial Directories. Exhibits F, G, and H to Plaintiff's Response to Motion for Summary Judgment. Plaintiff has not aided the court in interpreting these figures. Viewing them in the light most favorable to plaintiff, they seem to indicate that, where comparisons with his predecessor or successor were possible, in some cases plaintiff outperformed these persons and in

some cases he did not. *Id.* In making out a prima facie case, however, plaintiff must demonstrate that he was "doing his job well enough to meet the employer's legitimate expectations." *La Montagne,* 750 F.2d at 1409. As noted above, it is undisputed that plaintiff was not performing up to defendant's expectations. The issue, then, is whether Kotsher's expectations were "legitimate." Plaintiff contends that they were not. He has not, however, presented any evidence to rebut defendant's contention that economic and other factors made these expectations necessary and realistic. It is not our duty to "determine the validity of the defendant's business decision as long as the decision was made in good faith." *Dorsch,* 782 F.2d at 1426. Plaintiff calls Kotsher's expectations "unrealistic." He has not, however, produced any evidence to support this argument, let alone evidence that the expectations were not formed in good faith. Because plaintiff has not put forth enough evidence from which a jury could reasonably infer that he was performing his job adequately, he cannot make out a prima facie case of age discrimination.

We also find, however, that even if plaintiff could make out a prima facie case of age discrimination, summary judgment in favor of defendant would be appropriate. If plaintiff had made out a prima facie case, defendant would have had the obligation to articulate a legitimate, non-discriminatory reason for its offering plaintiff early retirement. As discussed above, defendant produced a substantial body of evidence tending to show that it offered plaintiff early retirement because of his poor performance. With this showing, defendant would have successfully shifted the burden of proof back to plaintiff to demonstrate that defendant's asserted reason for offering plaintiff early retirement was a mere pretext for discrimination. We find that plaintiff is unable to satisfy this burden.

Where an employer claims that an employee was fired because of poor performance, one type of evidence an employee may use to demonstrate that the employer's asserted reason was pretextual is evidence that he did in fact perform his job satisfactorily. Such evidence by itself, however, is not enough. In this case, even if plaintiff could prove that he was performing his job satisfactorily, he would not be able to prove that defendant's asserted reason for firing him was pretextual. Simply showing that an employer mistakenly believed that an employee was a poor performer does not necessarily mean that the employer used his alleged poor performance as a pretext for discrimination. *Brown v. M & M/Mars,* 883 F.2d 505, 509 (7th Cir.1989). The employee must combine the evidence of his satisfactory performance with some evidence that the employer improperly considered age in making its employment decision. *Brown,* at 511; *see Parker v. Federal National Mortg. Ass'n,* 741 F.2d 975, 980 (7th Cir. 1984).

Plaintiff has not, however, put forth any evidence from which one can reasonably infer that he was offered early retirement because of his age, and he thus cannot make a showing that defendant's asserted reason was a mere pretext for age discrimination. In discussing plaintiff's case under *Price Waterhouse,* we found that he had produced virtually no evidence connecting his offer of early retirement with his age. We do not believe that a plaintiff should be required to produce enough evidence to satisfy the *Price Waterhouse* threshold, or even any direct evidence of age discrimination, to make a "pretext" showing at the summary judgment stage. A plaintiff must, however, produce some evidence, either direct or indirect, from which a jury could reasonably infer that defendant's employment decision based on the plaintiff's age. *See Parker,* 741 F.2d at 980. Plaintiff has failed to meet even this lesser burden. Most of the evidence proffered by defendant was offered to counter defendant's contention that advertising sales declined under his supervision, or to demonstrate Jerrold France's general hostility towards him. Of the few alleged statement by officers of defendant which mentioned age, one was innocuous and the others had no connection whatsoever to any employ-

ment decision, let alone the 1986 decision to offer plaintiff early retirement. Bayless Affidavit, ¶¶ 8–9; Summers Affidavit, ¶¶ 29–30.

Because plaintiff has failed to produce any evidence from which a jury could reasonably infer that his age had anything to do with defendant's decision to offer him early retirement, he cannot demonstrate that defendant's asserted reason for offering him early retirement was a mere pretext for discrimination. *See Parker*, 741 F.2d at 979–980. Even if plaintiff had made out a prima facie case of discrimination, defendant would have been able to shift the burden back to plaintiff to demonstrate that defendant's asserted reason for offering him early retirement was a mere pretext for discrimination. As plaintiff would not be able to satisfy this burden, summary judgment in favor of defendant is appropriate. Given this disposition of the case, we do not need to rule on defendant's contention that plaintiff was not discharged.

### III.  CONCLUSION

For the above reasons, defendant's motion for summary judgment is granted.