**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 7 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LOUISE L. O'HEARON,

     Plaintiff - Appellant
     Cross-Appellee,

v.

CASTLEVIEW HOSPITAL and
ANNA MAE PEREZ,

     Defendants - Appellees
     Cross-Appellant.

Nos. 96-4140, 96-4146,
& 96-4175
(D.C. No. 93-C-798-W)
(District of Utah)

**ORDER AND JUDGMENT** [*]

Before **TACHA**, **KELLY** and **LUCERO**, Circuit Judges.

Louise O'Hearon appeals from a jury's finding that defendants Castleview

Hospital ("Castleview") and Anna Mae Perez were not negligent in this medical

malpractice action. O'Hearon challenges evidentiary and procedural rulings made

by the trial court and requests a new trial. Defendants cross-appeal the denial of

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

their motion for a directed verdict. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm. [1]

## I

O'Hearon fell and broke her hip at the home of her son Rick O'Hearon on August 19, 1991. She was taken to Castleview where her broken hip was repaired. On August 29, 1991, about nine days after the corrective surgery, while still in-patient at the hospital, she was directed by Perez, a hospital nurse, to use a toilet extender. The second amended complaint alleges that she expressed her discomfort with using the extender. According to plaintiff, when she sat on the extender, she fell over and struck the hip that had just been repaired, necessitating additional surgery.

Plaintiff then sent Castleview a notice of intent to file a medical malpractice action, as required by the Utah Medical Malpractice Act ("UMMA"). See U.C.A. § 78-14-8. Simultaneously, she sent a settlement offer to her son's insurance company, setting forth the theory of liability against him and requesting both special and general damages. In early August 1993, pursuant to UMMA, see U.C.A. § 78-14-12, O'Hearon requested a pre-litigation panel review. Her initial complaint, dated September 3, 1993, names Rick O'Hearon as the sole defendant

---

[1] Because we affirm the trial court's rulings and the jury's verdict, we need not address defendants' appeal of the denial of their motion for a directed verdict.

and alleges that his negligence caused the fall that broke and permanently damaged her hip. On January 24, 1994, appellant received an affidavit certifying compliance with UMMA, a prerequisite for pursuing a court action for medical malpractice against the hospital and its personnel. She then amended her complaint to add negligence and medical malpractice claims against the hospital and the nurse.

On February 21, 1995, plaintiff settled her lawsuit against her son and released him from all claims. A month later, the remaining defendants filed motions to (1) disclose the terms of this settlement to the jury; (2) apportion any fault attributed to Rick O'Hearon; and (3) offset the settlement amount against any subsequent judgment that might be awarded to plaintiff. Over plaintiff's opposition, the district court permitted the remaining defendants to disclose the settlement offer and the fact of the settlement to the jury. The court denied defendants' request that fault be apportioned.

A five-day jury trial was held in June 1996. The district court denied defendants' motion for a directed verdict. The jury returned a verdict against O'Hearon. The district court also denied appellant's Rule 59 motion for a new trial.

On appeal, O'Hearon challenges the following rulings by the district court: (1) admitting into evidence the settlement offer to her son, and the signed release

absolving him and his insurer of responsibility for any claims arising from the August 19, 1991 incident, while prohibiting her from introducing the settlement amount; (2) admitting into evidence her initial complaint, permitting defendants to cross-examine her as to its contents, and prohibiting her from presenting evidence as to Utah's medical malpractice prelitigation procedures; (3) denying her motion for a new trial based on alleged juror misconduct and improper argument by defense counsel; and (4) denying her motion to strike a juror for cause.

## II

All of the evidentiary errors alleged by plaintiff are reviewed for abuse of discretion. See Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995). "When we apply the abuse of discretion standard, we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value." Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 763 (10th Cir. 1997) (quotation omitted). The district court's essential control over the trial process should not be questioned absent a manifest injustice to the parties. See Gracia v. Lee, 976 F.2d 1344, 1345 (10th Cir. 1992).

## A

O'Hearon argues that the trial judge erred in admitting evidence of the settlement offer to Rick O'Hearon and subsequent release of all claims against

him. The admission of settlement offers and settlements is generally prohibited under the Federal Rules of Evidence. See Fed. R. Evid. 408. Rule 408 provides as follows:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible . . . . This rule [] does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408. The defendants contend, however, that the admission of the settlement evidence at issue here did not prove the "invalidity" or contest the amount of O'Hearon's claims against them, but was offered for impeachment purposes. Consequently, they argue that Rule 408 has no application here. The district court appears to have accepted this argument in admitting both the settlement offer and a redacted version of the release.

The plain text of Rule 408 permits evidence of a settlement to be admitted for purposes other than to prove the validity or amount of a claim. See, e.g., Towerridge, 111 F.3d at 770 (upholding admission of evidence that government settled plaintiff's claims for damages caused by government's delay because relevant to show defendant acted in bad faith); Broadcort Capital Corp. v. Summa Med. Corp., 972 F.2d 1183, 1194 (10th Cir. 1992) (upholding admission of

-5-

evidence related to settlement of entirely different claim); Breuer Elec. Mfg. Co. v. Toronado Syst. of America, Inc., 687 F.2d 182, 185 (7th Cir. 1982) (upholding admission of settlement evidence to rebut defendants' assertion of ignorance as to certain issues until suit was filed).

We decline to hold that the court below abused its discretion in admitting this evidence. O'Hearon's amended complaint attributes injuries to Castleview and Perez that her earlier settlement offer identified as resulting from her son's negligence. That inconsistency provides a reasonable impeachment basis to admit the offer and its subsequent acceptance. [2] We recognize that Rule 408 is designed to encourage settlement of disputes. See Eisenberg v. Univ. of New Mexico, 936 F.2d 1131, 1134 (10th Cir. 1991). But the initial determination as to whether this settlement information is sufficiently relevant to an adequate evaluation of a party's credibility to justify admittance must be made by the trial judge, to whom

---

[2] O'Hearon argues on appeal that the defendants used the settlement offer and release for purposes other than impeachment, in particular to suggest that she had already been compensated for the damages she sought at trial. But O'Hearon fails to indicate that she raised any objection to defendants' suggestion to this effect, so we will not further examine the matter here. By the same token, though appellant did move for the admission of the settlement amount, she nowhere requested such admission as rebuttal to defendants' insinuations of double recovery. We will not review errors alleged in the first instance on appeal. See Denison v. Swaco Geolograph Co., 941 F.2d 1416, 1422 (10th Cir. 1991). Of course, the proper procedure upon admittance of such a settlement and release would be to provide a limiting instruction to the jury regarding the purpose for which it may be used. We cannot tell from the record or briefs before us whether such a limiting instruction was requested or given.

-6-

we defer absent an abuse of discretion.  On the record before us, we conclude there is no reversible error.

**B**

Plaintiff next argues that the trial court abused its discretion in admitting into evidence her initial complaint and permitting her to be cross-examined on the assertions therein.  The initial complaint, which named only Rick O'Hearon as defendant, was superseded by amendment and withdrawal prior to trial.  According to plaintiff, its admission constitutes reversible error because, under federal pleading rules, "factual assertions in pleadings that have been amended or withdrawn are not admissible as admissions nor binding upon the party that made them."  Appellant's Br. at 31.  The record does not reveal that O'Hearon objected to the admission of the prior pleadings below on these grounds.  We therefore review only for plain error.    See  Denison v. Swaco Geolograph Co.    , 941 F.2d 1416, 1422 (10th Cir. 1991) (holding where party enters no objection or objects on different grounds at trial than on appeal, trial court's rulings are reviewed for plain error).

Under that standard, O'Hearon's argument must fail.  Contrary to plaintiff's contention, although assertions made in a superseded pleading are not binding judicial admissions, such assertions may be treated as ordinary evidentiary admissions.  See 5 Charles Alan Wright & Arthur R. Miller,    Federal Practice &

Procedure § 6726, at 228 (2d ed. 1990). Consequently, they may be admitted against a party as long as they are not treated as binding in the manner of judicial admissions and a party's explanation for any inconsistency or error is given due weight by the trier-of-fact. See id. We are satisfied that the district court gave appellant an adequate opportunity to explain any inconsistencies between factual assertions in the initial complaint and subsequent pleadings.

It is, however, unclear why the entire complaint was admitted because cross-examination of plaintiff as to the factual assertions contained therein would appear to be sufficient for any proper purpose. The pleading itself, with its caption naming only Rick O'Hearon as defendant, may have been unduly prejudicial and insufficiently probative to warrant admission. However, we can find nowhere in the record where plaintiff objected to the admission of the text of the pleading on these grounds. Nor has she persuaded us that any such error might amount to manifest injustice. See Smith v. Northwest Fin. Acceptance Corp., 129 F.3d 1408, 1416 (10th Cir. 1997) (declining to reverse error not preserved at trial absent showing of manifest injustice).

In fact, the only objection made below was that the admission of the initial complaint and subsequent cross-examination of plaintiff as to its general development and its contents violated the attorney-client privilege. For many of the questions to which this objection was lodged, however, the elicited information

-8-

was not related to "communication between the client and the attorney . . . made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence." United States v. Lopez, 777 F.2d 543, 552 (10th Cir. 1985). Further, to the extent that the district court may have erred in permitting some of these questions, appellant's argument as to how the inclusion of this testimony prejudiced her is difficult to decipher. See Frontier Ref., Inc. v. Gorman-Rupp, Inc., 136 F.3d 695, 705 (1998) (error in admitting evidence protected by attorney-client privilege "requires reversal only if it affected the substantial rights of the parties"). In our own review of the record, we conclude that the admission of this testimony did not so prejudice plaintiff and decline to find reversible error.

## C

Plaintiff contends that the trial court abused its discretion in not permitting her to inform the jury that UMMA restricts a plaintiff's ability to file a malpractice action prior to completing certain procedures. See U.C.A. §§ 78-14-8, 78-14-12 (providing that no malpractice action may be brought until plaintiff gives a prospective defendant at least ninety days notice of an intent to commence an action and has gone through a pre-litigation panel hearing). She argues that, as a result, she was unable to explain adequately why her initial complaint, filed prior

to completion of UMMA's prelitigation process, named only Rick O'Hearon as a defendant and made no mention of the hospital or Perez.

However, plaintiff misconstrues the ruling below on this matter. The trial court merely barred her attorney from testifying <u>himself</u> as to these procedures, concluding that, under the Utah Rules of Professional Responsibility, "a lawyer shall not act [] as an advocate in a trial in which the lawyer is likely to be a necessary witness." Appellant's App. at 70. It does not appear from the record that the trial judge prevented plaintiff from presenting an expert to testify as to the requirements for filing a malpractice action under Utah law, and plaintiff offers no explanation as to why no expert was presented. Under these circumstances, we find no abuse of discretion.

### III

Plaintiff challenges the district court's denial of her motion for a new trial. We review that decision under an abuse of discretion standard. <u>See</u> <u>Unit Drilling Co. v. Enron Oil & Gas Co.</u>, 108 F.3d 1186, 1193 (10th Cir. 1997). Considering each of three plaintiff's arguments, we conclude none has merit.

O'Hearon first argues that a new trial or evidentiary hearing is warranted for alleged juror misconduct. Immediately after the jury retired to deliberate, but before a verdict was rendered, the trial judge reported to the parties that he had witnessed a brief communication between one of the defendants' representatives

and a juror outside the elevator.  Defendants submitted an affidavit from Bonnie

Cook, the offending party, stating that no improper discussion had taken place, and

that she had merely commented on the juror's jewelry.  Subsequent to the

rendering of the verdict, plaintiff moved for a new trial based on this improper

contact.  The trial court rejected this motion, ruling as follows:

> No request was made by the plaintiff for any inquiry . . . , nor was any objection made . . . until plaintiff filed her Rule 59 motion some ten days after the return of the verdict and the discharge of the jury. . . . I regard any interaction between Cook and this juror to have been ill-advised and improper.  Nevertheless, I don't find evidence has been presented sufficient to justify a hearing or as basis for a new trial.  Moreover any objection by the plaintiff relating to this incident should have been made before the jury verdict was rendered and the jury was discharged.

Appellees' Supp. App. at 307-08.

Plaintiff has pointed to no evidence that causes us to question the trial

court's assessment of this matter, nor has she explained why an objection or

request for mistrial was not entered at the time she first learned of the improper

contact.  Furthermore, she has not demonstrated how the fundamental fairness of

the proceedings may have been affected.     See Vanderwater v. Hatch  , 835 F.2d 239,

244 (10th Cir. 1987) ("Subject to exceptions when the conduct alleged clearly

affects the fundamental fairness of the proceedings, an objection alleging juror

misconduct may be rejected if not raised in a timely manner.").  We have expressly

rejected a per se requirement that the trial court conduct an evidentiary hearing

whenever there is a suggestion of possible juror misconduct arising after trial has commenced. See United States v. Bradshaw, 787 F.2d 1385, 1390 (10th Cir. 1986) ("In responding to allegations of juror bias that arise during a trial, the trial court's decision as to how to proceed will not be reversed except for an abuse of discretion."). We see no reason to conclude that the trial court abused its discretion in denying this motion.

O'Hearon also argues for a new trial because a juror requested of the court clerk the telephone number of one of the defendants' expert medical witnesses. According to an affidavit of defendants' paralegal, defendants did not furnish this number to the clerk to pass on to that juror until after the jury returned its verdict. Plaintiff presents no evidence suggesting defendants initiated any contact with this juror or in any way responded to the juror's request prior to the verdict. We agree with the district court that the facts before us are insufficient to suggest any improper contact between that juror and either the expert or any representative of the defendants.

Plaintiff next argues that the defense attorney committed fraud on the court by arguing in summation that she should have named the hospital and Perez in the initial complaint. However, she fails to cite to any portion of the record in support of this argument. See United States v. Rodriguez-Aguirre, 108 F.3d 1228, 1238 n.8 (10th Cir. 1997) (appellant bears responsibility of tying relevant facts

-12-

supported by specific record citations to legal contentions).  Moreover, from our own review of the record, we conclude that even were such improper argument made by defense counsel, plaintiff made no objection, and no statement in the closing argument rises to the level of plain error.     See Denison , 941 F.2d at 1422.

## IV

Finally, O'Hearon appeals the district court's denial of her challenge for cause of a potential juror who stated that she had five aunts who were nurses and that she had worked in a hospital as a nurse's aide.  When asked by the court if that would affect her judgment, the potential juror responded: "Probably not.  I think I could make a fair judgment."  Appellant's App. at 44.  Plaintiff argues that this answer was equivocal and required dismissal of this juror.  We review the district court's refusal to strike a juror for cause for an abuse of discretion.     See Getter v. Wal-Mart Stores, Inc.    , 66 F.3d 1119, 1122 (10th Cir. 1995).  We conclude that the district court was well within its discretion when it determined that the juror's answer indicated that she thought she could be fair, and consequently denied plaintiff's challenge.     Moreover, plaintiff has shown no prejudice from the denial of this challenge as this juror was ultimately not seated on the jury.

**V**

For the reasons set forth above, the trial court's rulings are AFFIRMED.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge